## EDWIN HASKIN

*v.*

## HENRY HASKIN.

1. INSTRUCTIONS. An instruction which is so confused and obscure that it is calculated to mislead the jury, is erroneous.

2. AGENCY — *liability of principal to indemnify his agent.* Under ordinary circumstances, where an agent incurs loss in the proper prosecution of the business of his agency, the liability of the principal to indemnify him, follows, as of course.

3. SAME — *how far the conduct of the agent may impair his right to indemnity.* If the agent neglects his duty in reference to the matter out of which his loss arises, to the injury of his principal, such neglect will, to the extent of the injury, reduce or discharge the liability of the principal to indemnify the agent.

4. But, if such neglect does not result in injury to the principal, the rights of the agent will not be affected thereby.

5. RECOUPMENT — *money paid under duress.* In order to enable a defendant to recoup money which he alleges was paid to the plaintiff under duress, it must be shown to have been paid under some kind of legal duress.*

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of assumpsit, brought in the court below by Henry Haskin against Edwin Haskin, to recover the value of 800 barrels of salt, which the plaintiff claims he was obliged to furnish upon a warehouse receipt, issued by him, in his own name, but as the agent, and while he was carrying on the business of the defendant.

---

* See *Elston et al.* v. *City of Chicago,* 40 Ill. 514, as to what will be regarded as a compulsory payment.

It appears, that, prior to June, 1863, Edwin Haskin, the defendant, was engaged in the salt business in Chicago, and Henry, the defendant, was in his employment.

In May of that year, the defendant returned from New York, stating that he had taken the agency of a salt company, and could not carry on the business any longer, but would have to close it up.

A short time after, the business was being carried on in the name of Henry Haskin, the plaintiff, at the same office, but, as he insists, as the agent of Edwin. ·

From June 1, 1863, to April 1, 1864, the business was carried on, and all warehouse receipts were issued, in the name of Henry Haskin, but the bank account was kept in the name of Edwin, during which time, on the 13th of October, 1863, a warehouse receipt was given in the name of Henry Haskin, for 800 barrels of salt, which was not entered on the books.

It was admitted by both parties that Henry Haskin was the agent of Edwin Haskin, in carrying on the salt business, from June 1, 1863, to April 1, 1864, in the name of Henry Haskin, but on account of Edwin Haskin.

On the 1st of April, 1864, at which time a settlement was had between the parties, and their business relations ceased, there was a surplus of a little less than fifteen hundred barrels of salt on hand, as claimed by the plaintiff, for which the books did not show outstanding receipts.

It appears that Henry Haskin had the whole charge of the business from June 1, 1863, to April 1, 1864. The profits of the business during that time were about $18,000, the surplus salt on hand not entering into the calculation.

On the settlement between the parties, on the 1st of April, 1864, the defendant paid to the plaintiff, the sum of $6,000, one-third of the profits, which the defendant claims was extorted from him by the plaintiff withholding receipts and other valuable papers, which he refused to deliver up until he was paid that amount.

On the 16th of November, 1864, a demand was made of Edwin Haskin for the salt specified in the warehouse receipt

mentioned, which was given in the name of Henry Haskin, and Edwin refused to deliver the salt or pay for it. Henry thereupon delivered the salt called for by the receipt, and afterward instituted this suit to recover from Edwin the value thereof.

The theory of the defendant, upon one branch of the case, is, that the six thousand dollars which he paid to the plaintiff, on the 1st of April, 1864, being extorted from him in the manner stated, he may recoup the same in this action.

On the trial the court gave the following instruction:

"This action is brought to compel the defendant to indemnify the plaintiff for acts done by the latter as agent of the former. The fact, the defendant was the principal and the plaintiff was his agent, is not in dispute, and under ordinary circumstances, the liability to indemnify follows as of course. The failure to enter the receipt in question, in this case, upon the books, if caused by the carelessness, neglect, or default of the plaintiff, and, if the defendant was injured by such failure, would, to the extent of such injury, reduce or discharge the liability of the defendant; but if the defendant was not injured by such failure, then it would have no effect. But a more serious question in this case is, whether the plaintiff, at the time the agency terminated, wrongfully took into his possession, and withheld from the defendant [the property of the defendant], until the defendant would submit to pay him a share of the profits of the business beyond his salary, and beyond what he was entitled to by any agreement between them; because, if that be so, the defendant, to the extent to which he was injured by such conduct of the plaintiff, would be discharged from the liability imposed by law upon him to indemnify the plaintiff as his agent. If the property consisted of receipts or orders issued to the plaintiff, it would make no difference as to the right of the plaintiff to deprive the defendant of the control of them, if in fact they were the property of the defendant."

The words in brackets are not contained in the instruction

as set forth in the record, but the plaintiff insists they were in the original instruction as given by the court to the jury; and one of the grounds of objection to the instruction is, that, without those words, or others of definite import, it is vague and uncertain, and calculated to mislead the jury.

A verdict was returned for the plaintiff for $1,485.60 damages, upon which judgment was rendered. The defendant thereupon took this appeal.

Besides the question as to the sufficiency of the instruction, a question is presented in relation to the character of duress under which money has been paid, which will authorize a recoupment in favor of the party paying it.

Messrs. HURD, BOOTH & KREAMER, for the appellant.

Messrs. KING & SCOTT, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

It appears from the record in this cause, that the instructions asked by counsel for both parties were refused by the court, the court undertaking to give, instead thereof, an instruction of its own, in its own phraseology. We have examined the record for this instruction, and are satisfied it would have embodied the law correctly, but for the omission of a few very important words, which omission was doubtless accidental, but destroys the meaning of the instruction.

The instruction is, *verbatim*, as follows: " This action is brought to compel the defendant to indemnify the plaintiff for acts done by the latter as agent of the former. The fact that the defendant was the principal, and the plaintiff was his agent, is not in dispute, and, under ordinary circumstances, the liability to indemnify follows, as of course. The failure to enter the receipt in question in this case upon the books, if caused by the carelessness, neglect or default of the plaintiff, and, if the defendant was injured by such failure, would, to the extent of such injury, reduce or discharge the liability of the defend-

ant, but, if the defendant was not injured by such failure, then it would have no effect.

"But a more serious question in this case is, whether the plaintiff, at the time the agency terminated, wrongfully took into his possession and withheld from the defendant, until the defendant would submit to pay him a share of the profits of the business beyond his salary, and beyond what he was entitled to by any agreement between them; because, if that be so, the defendant, to the extent to which he was injured by such conduct of the plaintiff, would be discharged from the liability imposed by law upon him to indemnify the plaintiff as his agent. If the property consisted of receipts or orders issued to the plaintiff, it would make no difference as to the right of the plaintiff to deprive the defendant of the control of them, if in fact they were the property of the defendant."

"Took into his possession and withheld from the defendant," what? There is an omission of important words here, which we are not at liberty to supply, and which with the volume of matter contained in it makes the instruction obscure and calculated to confuse and mislead the jury and be of no use as an aid to their arrival at correct results. Counsel, on both sides, have taken the liberty, in their arguments, of changing the instruction given, but a resort to the record shows that it was in the identical words in which we have given it. It, being confused and obscure, was calculated to mislead, and was therefore erroneous, and must reverse the judgment.

Upon the merits, we may say, if the appellee was not entitled to the six thousand dollars paid him by appellant, appellant must be shown to have paid it under some kind of legal duress before he can recoup.

For the reasons given, the judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*